**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DARREN C. SANDER,                                    Case No. 1:11-cv-673

        Plaintiff,                                      Barrett, J.
                                                     Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Darren Sander filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes.  In addition to his statement of errors, Plaintiff has filed an alternative motion for leave to supplement the record.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.  I further conclude that Plaintiff's alternative motion for consideration of new evidence should be denied.

**I. Summary of Administrative Record**

In September 2008, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of January 1, 2006 due to physical and mental impairments. (Tr. 179-79).  After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo*

1

before an Administrative Law Judge ("ALJ").  An evidentiary hearing, at which Plaintiff was represented by counsel, was held on January 31, 2011.  (Tr. 28-57).  A vocational expert, Ann t. Neulicht, Ph.D was also present and testified.  On March 15, 2011, ALJ Katherine D. Wisz denied Plaintiff's application in a written decision.  (Tr. 12-22).

The record on which the ALJ's decision was based reflects that Plaintiff was 36 years old on his alleged disability onset date, and a high school graduate.  (Tr. 20). Plaintiff had past relevant work as a carpenter, dry wall installer and roofer. (Tr. 20).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease; spinal stenosis; central cord syndrome with myelopathy; peripheral neuropathy; right shoulder bursitis, hepatitis C; depression; and alcoholism in remission."  (Tr. 11).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following conditions:

> He can occasionally lift up to 20 pounds and frequently lift 10 pounds; he can sit, stand, and walk up to 6 hours in a normal eight-hour workday; he can occasionally climb ramps or stairs but cannot climb ladders, ropes, or scaffolds; he can occasionally engage in postural activities such as balancing, stooping, kneeling, crouching, or crawling; he is limited to only occasionally handling or fingering objects; and he is limited to performing work involving simple, routine, receptive tasks.

(Tr. 16).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ

concluded that, while the Plaintiff is unable to perform his past relevant work, he can nonetheless perform jobs that exist in significant numbers in the national economy. (Tr. 20-21). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by: 1) failing to find that Plaintiff's impairments met or equaled Listing 1.04; 2) determining that Plaintiff was capable of performing light work; and 3) finding that there were a "significant number" of jobs in the regional/national economy that Plaintiff could perform. Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can

still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. Specific Errors

### 1. Listing of Impairments

Plaintiff argues first that the ALJ failed to properly evaluate or consider the issue of whether his cervical cord syndrome, with associated upper and lower extremity problems, met or equaled Listing 1.04 and/or any other relevant Listing. Plaintiff's assertion lacks merit.

At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 Fed. Appx. 488, 491 (6th Cir. 2010). The Listing of Impairments, located

at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a). In other words, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits.  Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." *Id*. § 404.1525(c)(3).

A claimant must satisfy all of the criteria to "meet" the listing. *Id*.; *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).  However, a claimant is also disabled if his impairment is the medical equivalent of a listing, which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a); 20 C.F.R. § 404.1526(a).  An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment. *Lawson v. Comm'r of Soc. Sec.*, 192 Fed. Appx. 521, 529 (6th Cir. 2006) (upholding ALJ who "compar[ed] the medical evidence of Lawson's impairments with the requirements for listed impairments contained in the SSA regulations"); 30 Fed. Proc., L.Ed. § 71:234.

Plaintiff bears the burden of proving that his impairment meets or equals a listed impairment.  *Arnold v. Comm'r of Soc. Sec.*, 238 F.3d 419, 2000 WL 1909386 at *2 (6th Cir. 2000); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

Here, the ALJ determined that Plaintiff's impairments did not meet or equal any of the Listings in the Listing of Impairments.  When making this finding, the ALJ noted that Plaintiff's degenerative disc disease and right should bursitis are impairments of the musculoskeletal system.  In order to meet a listing requirement for a musculoskeletal impairment there must be a demonstrated loss of function in the ability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment. *See* Listing 1.00(B)(2).[1]  Upon consideration of the medical evidence, the ALJ determined that the record did not demonstrate "loss of function in the form of an inability to ambulate effectively on a sustained basis . . . or the inability to perform fine and gross movements effectively on a sustained basis" necessary to meet one of the listed impairments—namely Listings 1.04, 11.04, 11.08, and 11.14 (Tr. 14).

---

[1] Listing 1.00B2b provides:

(1) Definition.  Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities....

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping or banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of an assistive device does not, in and of itself, constitute effective ambulation.

Plaintiff asserts that the ALJ's analysis "did nothing more than cavalierly dismiss any notion that he might meet any of the Listings for no other reason than he said on a form that he could do a few housekeeping chores." (Doc. 11). Plaintiff further argues that the ALJ should have obtained testimony from a Medical Expert to determine if Plaintiff's impairments met or equaled any of the Listings because Plaintiff had no treating physician to provide input as to his functional capacity. Last, Plaintiff asserts that an April 2010 decision from a North Carolina "State Hearing Officer" finding that Plaintiff's impairments met the requirements of Listing 1.04(A) calls into question the validity and supportability of the ALJ's decision. (Doc. 11 at 8; Tr. 183-85). As previously stated, Plaintiff's assertions lack merit.

First, contrary to Plaintiff's contention, the ALJ's decision indicates that he properly considered the evidence of record in determining that Plaintiff's impairments did not meet or equal any Listing. Notably, the record does not establish that Plaintiff has an inability to ambulate effectively as required to meet the Listings for impairments of the musculoskeletal system. As noted by the ALJ, Plaintiff's own reported activities provided conclusive evidence that he was able to effectively ambulate and use his upper extremities. (Tr. 14). As the ALJ noted, Plaintiff reported in October 2008 that he was able to shave, dress, bathe, make his bed, do laundry, and sweep (Tr. 14, 216-17). Plaintiff also reported that he could walk four blocks at one time, and he even testified that he was able to ambulate without assistance on flat surfaces and with a cane on uneven surfaces (Tr. 14, 37, 220). Also, in November 2008, Plaintiff was using neither

a cane nor crutches to ambulate and in both January and April 2010, Plaintiff was described as ambulatory when at the hospital. (Tr. 334, 412, 413).  Moreover, Plaintiff's points to no medical evidence—such as examination findings or treatment notes—that demonstrate he experienced an inability to ambulate effectively.  The ALJ reasonably concluded that Plaintiff's ability to perform these activities provided strong evidence that his impairments did not meet or equal the requirements of any of the listings, including Listing 1.04 (Tr. 14). Given the lack of contrary medical evidence, the ALJ's finding was reasonable and supported by substantial evidence.

Next, the ALJ was not required to obtain the testimony of a medical expert.  The ALJ generally has the discretion to determine whether to seek additional expert testimony or to require an additional consultative examination. *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir.2001) (citing 20 C.F.R. § 404.1517).  Indeed, as the Sixth Circuit further indicates, "[t]he regulations do not require the ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a decision." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  Thus, there is no mandate requiring an ALJ to solicit such evidence.  *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009).   Here, the ALJ did not abuse his discretion because his decision included a fair recitation of the evidence and included well-documented findings supporting the conclusion that Plaintiff was not disabled. (Tr. 14-20).

Finally, Plaintiff's assertion that the finding of the North Carolina "State Hearing Officer" should somehow render the ALJ's decision in invalid lacks merit. As noted by the Commissioner, the state hearing officer was neither a medical source nor a medical expert and had never examined or treatment Plaintiff. Moreover, it is unclear if the state hearing officer had the same evidence before him that the ALJ did in making her step three finding. Finally, the opinion of another governmental agency has no bearing on the Social Security Administration's determination as to whether a claimant is disabled, as Plaintiff acknowledges. See 20 C.F.R. § 404.1504 ("We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding on us."); Social Security Ruling 06-3p. Thus, this decision does not undermine the ALJ's step three finding that Plaintiff did meet or equal a listed impairment. Accordingly, the ALJ's decision is substantially supported in this regard.

### 2. RFC Assessment

Plaintiff next argues that the ALJ erred in finding that he was capable of performing a reduced range of light work. (Doc. 11 at 9-15). Plaintiff primarily challenges this RFC finding by arguing that the ALJ improperly evaluated the credibility of his subjective allegations that his impairments caused disabling symptoms and limitations. Plaintiff further asserts that the ALJ erred in finding that he was able to "stand or walk well enough to engage in 'light' work as defined." *Id.* at 11.

*1. Credibility*

Plaintiff charges that the ALJ's credibility finding involved a "single line of boilerplate" language and was "nothing more than boilerplate at its worst." (Plaintiff's Br. 10).  Notably, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the [ALJ's RFC finding]" (Tr. 17).

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475.  "[I]f disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken." *Id.* (citing 20 C.F.R. §404.1529(c)(3)).[2] However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted).  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference,

---

[2]  The regulations provide that the ALJ's credibility decision must include consideration of the following factors:  1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

In this case, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[3]  (Tr. 17).  In discussing Plaintiff's credibility, the ALJ noted that the objective medical evidence of record and Plaintiff's own description of his daily activities do not support his allegations of total disability.  *Id.* Specifically, the ALJ noted that the objective medical evidence showed only mild findings and/or no abnormalities.  (Tr. 17-18, 379, 390, 411).  The ALJ further noted that Plaintiff's reported activities were inconsistent with his claims of disability. As outlined above, Plaintiff was able to engage in physical activities such as shopping, doing household chores, and caring for his personal needs.  (Tr. 19, 216-218).  Plaintiff also

---

[3]  The Court does not find this circular "form" statement used here by ALJ Wisz (and many others) to be helpful.  The impression it gives the Court is that the claimant is credible up until the point that his testimony contradicts the findings of the ALJ and then he is no longer credible.  It seems that the ALJ should find that the claimant *is or is not* credible.

regularly attended Alcoholics Anonymous meetings, used public transportation, and rode in a car (Tr. 19, 218).[4]  The ALJ also noted that Plaintiff reported that he was able to lift up to 50 pounds and could walk four blocks before he needed to rest.  (Tr. 19, 220).

The ALJ properly considered that Plaintiff engaged in a variety of daily activities, and it was appropriate for him to consider this factor in making his credibility finding. *See Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.").  *See also Heston v. Com'r*, 245 F.3d 528, 536 (6th Cir. 2001) (ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).

In sum, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence.  *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and she reasonably concluded that they were not fully credible.  The ALJ's credibility finding is entitled to deference and thus should be affirmed.  *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003).

---

[4] The only reason Plaintiff did not drive a car was because he did not have a driver's license. (Tr. 19, 218).

### 2.  Standing and Walking Limitations

Plaintiff also asserts that the ALJ's RFC finding related to his standing and walking limitations is not substantially supported.  Notably, in order to perform light work and individual must be able to stand or walk for at least 6 hours in an 8 hour workday.  Plaintiff argues that he has a "great deal of trouble with both walking or standing" due to his hyperreflexia and low extremity spasticity.  Plaintiff, however, fails to point to any documented functional limitations associated with those diagnoses.  Notably, a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment.  *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment).  Here, other than asserting that the record shows "great deal of trouble with both walking or standing," Plaintiff does not offer any objective medical evidence establishing that his impairments resulted in any functional limitations or otherwise affected his ability to work or stand as required for light work.[5]  Accordingly, the undersigned finds that the ALJ's decision is substantially supported in this regard.

### 3.  Vocational Errors

Plaintiff's last assignment of error asserts that the ALJ erred in finding that there were significant jobs in the national and regional economy.   At the administrative

---

[5] Plaintiff also asserts that that ALJ's RFC finding is not supported by substantial evidence because she found that Plaintiff's impairments resulted in differing lifting and handling limitations.  Plaintiff's assertion lacks merit.  As correctly noted by the Commissioner, lifting and handling are completely different tasks requiring different degrees of strength and manipulation. Notably, lifting and handling are considered separate and independent tasks in the state agency opinions. (Tr. 357, 359).  Moreover, Plaintiff points to no medical source opinion or medical evidence that suggests the ALJ's lifting restrictions were not restrictive enough.

hearing, in response a hypothetical question detailing a person with Plaintiff's vocational profile and RFC, the vocational expert testified that such a person would be able to perform the job of surveillance system monitor.  (Tr. 54-56).  The vocational expert then identified 500 jobs in the regional economy and "at least" 50,000 jobs in the national economy that Plaintiff was able to perform despite his limitations.  (Tr. 56).

Plaintiff first argues that the ALJ's step-five determination is not supported by substantial evidence because the vocational expert erred when she did not identify the "geographical or statistical metropolitan area that she was using in terms of the regional economy." (Doc. 11 at 16).  Plaintiff further asserts that the number of jobs identified by the vocational expert in the national and regional economy does not represent a "significant" number of jobs as required by Agency regulations.  In addition, Plaintiff argues that his impairments preclude him from performing the requirements of the surveillance system monitor job as defined by the Dictionary of Occupational Titles. Plaintiff's assertions are misplaced.

Frist, contrary to Plaintiff's assertion, the vocational expert expressly testified at the hearing: "I consider the regional economy to be the State of North Carolina" (Tr. 55). Furthermore, case law demonstrates that these numbers constitute a "significant" number of jobs both regionally and nationally for the purpose of finding Plaintiff not disabled at step five.  In *Guilfoyle v. Sec'y of HHS*, 1995 WL 105592, at *1 (6th Cir. 1995), (citing *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)), the Sixth Circuit found 500 jobs in region was a significant number of jobs.  And in *Bishop v. Shalala*,

1995 WL 490126, at *2-3 (6th Cir. 1995), the Sixth Circuit found that 6,100 jobs nationally constituted a significant number of jobs.  *See also Lewis v. Sec'y of HHS*, 1995 WL 124320 at *1 (6th Cir. 1995) (14,000 jobs nationally constitutes a significant number of jobs).

Last, Plaintiff asserts the VE's testimony conflicts with the DOT and demonstrates that the ALJ's decision at step five of the sequential evaluation process is not supported by substantial evidence.  As noted above, the vocational expert testified that a hypothetical individual with Plaintiff's functional limitations could perform the job of surveillance system monitor.  The DOT definition of the surveillance-system monitor job requires an individual to "[p]ush hold button to maintain surveillance" . . . . and "adjust monitor controls when required."  *See* DOT 379.367-010.  The DOT listing of this position also included a reasoning level of three.[6]  *Id.*  Plaintiff maintains that the ALJ's RFC assessment limiting him to "occasional" handling and fingering and "simple routine repetitive tasks," precludes him from performing the requirements of the surveillance system monitor job as defined by the DOT.  Plaintiff's arguments are unavailing.

---

[6]    The DOT assigns each job a General Educational Development score, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance."  Dep't of Labor, Dictionary of Occupational Titles, App'x C(III), 1991 WL 688702 (G.P.O.) (4th ed., rev'd 1991). The GED scale is composed of three divisions-reasoning development, mathematical development, and language development.  *Id.*  Reasoning Development Level 3 jobs require an individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations."  *Heffelfinger v. Astrue*, 1:10CV2892, 2012 WL 1004722 (N.D. Ohio Mar. 23, 2012) (citing Dep't of Labor, Dictionary of Occupational Titles, App'x C(III), 1991 WL 688702 (G.P.O.) (4th ed., rev'd 1991)).

First, Plaintiff has provided no evidence in support of his contention that his handling and fingering limitations outlined in the ALJ's RFC assessment preclude him from performing the tasks of a surveillance-system monitor.

Next, Plaintiff asserts that the DOT description of surveillance system monitor requires a higher level of reasoning than that required for "simple unskilled" work. Because the VE's testimony was inconsistent with the job description listed in the DOT, Plaintiff asserts that the ALJ's reliance on the VE testimony is not supported by substantial evidence. *See Marchitto v. Astrue*, 208-CV-148-FTM-DNF, 2009 WL 804620 (M.D. Fla. Mar. 27, 2009). The Sixth Circuit has held, however, that an ALJ may rely on VE testimony even if there is an apparent conflict between the VE's testimony and the DOT. See *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).

Notably, the ALJ has a duty under Social Security Ruling 00–4p to develop the record and ensure there is consistency between the VE's testimony and the DOT and "inquire on the record, as to whether or not there is such consistency." SSR 00–4p. Where, the ALJ questions the VE and the VE testifies that there is no conflict with the DOT, the Sixth Circuit has held that the ALJ is under no further obligation to interrogate the VE, especially where the plaintiff is afforded a full opportunity to cross-examine the VE. See *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 606 (6th Cir.2009). The ALJ is only required to develop the record further where the conflict between the DOT and the VE's testimony is apparent. *Id.*; *See also* SSR 00–4p ("If the VE's ... evidence appears

to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.").

Here, the vocational expert expressly testified that a hypothetical person with Plaintiff's physical and mental limitations would be able to perform the job of surveillance system monitor (Tr. 54-56).  The ALJ inquired, "And that's consistent with the DOT?" The VE responded, "Yes, ma'am."  (Tr. 56).  Plaintiff's counsel did not question the VE about any apparent inconsistencies between the testimony and the DOT relating to reasoning levels, nor did counsel bring any potential conflicts to the ALJ's attention after the hearing. Counsel was afforded a full opportunity to cross-examine the vocational expert and the ALJ had no affirmative duty under SSR 00–4p to conduct her own interrogation of the VE to determine the accuracy of the vocational testimony. *See Lindsley*, 560 F.3d at 606 (citing *Martin v. Commissioner of Social Security*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.")).  Because the ALJ specifically asked the VE if her testimony was consistent with the DOT and the uncontradicted testimony of the VE indicated that no conflict existed, the ALJ did not err by relying on such testimony in finding other jobs plaintiff could perform. *Id.*

Furthermore, the "D.O.T. lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00–4p (emphasis added). In other words, the reasoning levels

listed in the DOT reflect the maximum requirements for the sedentary jobs listed by the VE, and not the range of specific requirements an individual must satisfy to perform the jobs.  See *Hall v. Chater*, 109 F.3d 1255, 1259 (5th Cir. 1997) (not every job identified by a VE will actually "have requirements identical to or as rigorous as those listed in the D.O.T."); *see also French v. Astrue*, No. 2:08–cv–15, 2009 WL 151525, at *8 (E.D. Ky. Jan. 20, 2009) ("the DOT defaults to the highest physical demand level required by the job"). Social Security Ruling 00–4p recognizes that a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00–4p. Thus, the ALJ could reasonably rely on the VE's testimony that Plaintiff could perform the jobs identified at step five of the sequential evaluation process despite the DOT's listing of reasoning level three for such jobs.  Accordingly, the ALJ's decision is substantially supporteddin this regard.

### C.  Plaintiff's Alternative Motion for Leave to Supplement the Record

In addition to his statement of errors, Plaintiff has filed a separate motion for leave to supplement the record.  Plaintiff seeks to supplement the record to include exhibits related to the agency's May 2012 approval of a subsequent application for disability benefits that he filed in May 2011.  Plaintiff seeks to introduce three exhibits related to this award of disability benefits, including an examination an April 2012 consultative physical examination by Dr. Richard Sheridan that provided the basis for his award of benefits.  Notably, Plaintiff was found disabled because his impairments satisfied the requirements of Listing 11.08 (Spinal Cord or Nerve Root Lesions).

The Sixth Circuit has repeatedly made clear that "evidence submitted . . . after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Thus, courts evaluate additional evidence submitted after the ALJ's decision only for purposes of determining whether a remand under sentence six of 42 U.S.C. § 405(g) ("sentence six remand") would be appropriate. 42 U.S.C. §405(g); Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 483 (6th Cir. 2006). In seeking a sentence six remand, Plaintiff bears the burden of affirmatively showing that the evidence he seeks to submit is new, that he had good cause for not providing this evidence, and that the new evidence was material to the ALJ's decision. 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

Pursuant to Sentence Six, a court can remand for consideration of new evidence only if the plaintiff establishes that the evidence is both new, in that it was "not in existence or available to the claimant at the time of the administrative proceeding" and "material," meaning there is "a reasonable probability that the Secretary would have reached a difference disposition." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citations omitted); *see also Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). The plaintiff must also establish good cause for his failure to present the evidence to the ALJ. *See Bass v. McMahon,* 499 F.3d 506 (6th Cir. 2007); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). "'Good cause' is not established solely because the new evidence was not generated until after the ALJ's

decision.  The Sixth Circuit has taken a 'harder line.'" *Saunders v. Comm'r of Soc. Sec.*, 2010 WL 1132286 at *3 (W.D. Mich. March 3, 2010)(*quoting Oliver v. Sec. of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)(additional citations omitted).

In the present case, the additional evidence appears to be new, in that it was not in existence at the time of the ALJ's decision.  However, such evidence is not material to Plaintiff's current application for benefits.  Evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  As noted by the Commissioner, evidence from April and May 2012 have no relevance whatsoever to the ALJ's finding that he was not disabled from January 1, 2006 through the date of the ALJ's decision in March 2011.  *See Oliver v. Sec. of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (new evidence coming into existence over a year after the ALJ's decision was not material because it was not probative on the question of Plaintiff's condition at the time of the ALJ's decision).  Accordingly, the undersigned finds that the additional evidence Plaintiff asks the Court to consider does not support greater restrictions than those determined by the ALJ *at the time of her decision*.  As such, Plaintiff's motion to supplement the record is not well-taken.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1.  The decision of the Commissioner to deny Plaintiff DIB and SSI benefits be

**AFFIRMED** because it is supported by substantial evidence in the record as a whole;

2.  Plaintiff's alternative motion for leave to supplement the record (Doc. 15) be

**DENIED**; and

3.  As no further matters remain pending for the Court's review, this case be

**CLOSED.**

> _/s Stephanie K. Bowman_
> Stephanie K. Bowman
> United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DARREN C. SANDER,                                          Case No. 1:11-cv-673

        Plaintiff,                                          Barrett, J.
                                                                    Bowman, M.J.

   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).